

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 24S-CR-436

## Kortney Lee Elzey

*Appellant-Petitioner,*



FILED

Nov 20 2025, 11:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## State of Indiana

*Appellee-Respondent.*

---

Argued: February 27, 2025 | Decided: November 20, 2025

Appeal from the Huntington Circuit Court

Trial Court Case Nos.
35C01-2001-F6-17, 35C01-2102-F6-46, 35C01-2102-F6-48,

35C01-2110-F6-325, 35C01-2309-PC-9

The Honorable Samuel K. Conrad, Special Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 23A-CR-3058

---

**Opinion by Justice Massa**

Justices Slaughter and Molter concur.
Chief Justice Rush concurs in part and dissents in part with separate opinion.
Justice Goff did not participate in the decision of this matter.

**Massa, Justice.**

Article 4, Section 1 of our state Constitution vests "Legislative authority" in the General Assembly. Article 7, Section 1, meanwhile, vests the "judicial power" in one Supreme Court, with the power to adopt rules for the exercise of its jurisdiction. *See* Art. 1, Sec. 4. While we often strive to harmonize our rules with statutes, occasionally there are inconsistencies between the two bodies of law. This case exposes one.

A law adopted by the General Assembly requires the State Public Defender to represent the indigent in post-conviction proceedings if they are incarcerated in a "penal facility," which includes a county jail. But post-conviction rules adopted by our Court require courts to send such petitions to the Public Defender *only* if the petitioner is in the Department of Correction.

So, what happens if the petitioner is serving his sentence in a county jail, given recent sentencing reforms? The statute says the Public Defender shall represent him (subject to the agency's discretion to decline meritless claims). But the statute offers no particular procedure for how that relationship is to commence. It does not mandate the appointment of counsel; it doesn't even mandate the forwarding of the petition to the Public Defender office – again, that requirement appears in the post-conviction rules, but only if the petitioner is in prison. The rule clearly has not kept pace with legislation expanding the definition and use of "penal facility."

Thus, the controversy before us today. A petitioner serving a sentence in a county jail sought post-conviction relief. The judge declined to forward the petition to the Public Defender. Given that the judge was following our own rule, and didn't violate the statute, we are hard pressed to find error. But we nevertheless refer the issue to our Rules Committee to draft a rule extending the forwarding requirement in all cases where petitioners are incarcerated in any penal facility, including county jails.

# Facts and Procedural History

Appellant Kortney Elzey collected multiple convictions and probation violations for home improvement fraud. While serving his sentence in the Huntington County Jail, Elzey filed a *pro se* petition for post-conviction relief and requested it be forwarded to the Public Defender. The trial court denied his request and ultimately denied post-conviction relief. Four different case numbers are combined in the record, and one of the issues on appeal was the trial court's credit time calculations. The Court of Appeals affirmed the trial court on that issue, and we likewise summarily affirm after granting transfer. *See* Appellate Rule 58(A)(2).

Elzey now argues that the trial court erred by not referring his petition to the Public Defender. The State replies that under the plain language of our post-conviction rules, the court was not obliged to refer Elzey's petition because Elzey was not incarcerated in the Department of Correction. The State is correct, for now.

# Discussion and Decision

## I.   Indiana Code Section 33-40-1-2(a) and the Post-Conviction Rules

The right to counsel in post-conviction proceedings is not guaranteed by either the United States Constitution or Article 1, Section 13 of the Indiana Constitution. *See Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989). This is because our law does not regard a petition for post-conviction relief to be the same thing as a criminal proceeding, which calls for a public trial within the meaning of these constitutional provisions. *Id.* (citing *Carman v. State,* 196 N.E. 78 (Ind. 1935)). However, in the 1940's, our Court noted the need for representation in post-conviction cases, following years of *pro se* petitioners filing "confused and unintelligible" pleadings, which posed a "great burden" on our courts. *State ex rel. Lake v. Bain*, 76 N.E.2d 679, 683 (Ind. 1948) (Emmert, C.J., concurring). The General Assembly responded by enacting what is now Indiana Code Chapter 33-40-1, which established the Public Defender to represent prisoners in post-conviction proceedings. The original enactment of the

statute specified "the duty of the Public Defender to represent any person in any penal institution of this state who is without sufficient property or funds to employ his own counsel" in post-conviction proceedings following appeal. 1945 Ind. Acts ch. 38, § 2. Soon thereafter, we indicated, in dicta, that the statute applied to "all persons in prison" who were unable to afford counsel, *Lake*, 76 N.E.2d at 680, and "pauper inmates of the State prison" in particular, *State ex rel. Lee v. Wilson*, 77 N.E.2d 354, 355 (Ind. 1948).

In 1979, the Legislature amended the statute by broadening its scope to include any indigent person "confined in any penal facility of this state or committed to the DOC due to a criminal conviction or delinquency adjudication." Pub. L. No. 120-1979, § 9, 1979 Ind. Acts 487, 565. To this day, the statute has remained substantively the same and permits those who are unable to afford counsel to still test the legality of their conviction, commitment, or confinement, if the time for appeal has expired. *See* I.C. § 33-40-1-2. Thus, Elzey had a statutory right to representation by the Public Defender (if the office determined the petition had merit), *see id.* § 33-40-1-2(c), though the statute puts no onus on the post-conviction judge to forward the petition. That "forwarding" requirement is a creature of court rule which, unfortunately for Elzey, did not apply to him.

While the Legislature is tasked with "[e]nacting laws to protect Hoosiers," *Mellowitz v. Ball State Univ.*, 221 N.E.3d 1214, 1221 (Ind. 2023), the enactment of rules for litigating disputes is a core judicial function. *State ex rel. Bicanic v. Lake Cir. Ct.*, 292 N.E.2d 596, 598 (Ind. 1973) ("The Supreme Court has the inherent power to create rules of procedure and [that] right has been recognized by the Indiana General Assembly."). Therefore, in order to effectuate the Public Defender statute and others, our Court "has the inherent power to establish rules governing the course of litigation in our trial courts." *Hamilton v. Prewett*, 860 N.E.2d 1234, 1242 (Ind. Ct. App. 2007). Since November 13, 1979, our Court has devised such rules through the Indiana Supreme Court Committee on Rules of Practice and Procedure ("Rules Committee").

The Rules Committee is charged with reporting to the Court from time to time with recommendations and proposed amendments to promote simplicity in procedure, just determination of litigation, and elimination of unjustified expense and delay. The Rules Committee's structure, duties and activities are spelled out in Indiana Trial Rule 80. Throughout the year the Rules Committee receives proposed rule amendments from sources as varied as the Indiana Supreme Court, the State Bar Association, judges, attorneys, and private citizens. The Rules Committee studies these requests and determines whether proposing a change is appropriate. For relatively straightforward matters this process might only take a couple of months. For complex issues the process may take years. Because of this, it is not unusual for a proposal to go through several drafts before the Rules Committee settles on one to publish for public comment. *See generally* INDIANA COURT TIMES, *Profile of the Indiana Supreme Court Committee on Rules of Practice and Procedure* (July 3, 2012), https://times.courts.in.gov/2012/07/03/profile-of-the-indiana-supreme-court-committee-on-rules-of-practice-and-procedure/.

Our Court adopted the Rules for Post-Conviction Remedies in 1969. Under these rules, post-conviction relief is available to those who pled guilty, or to those who have appealed without being able to raise all challenges to their convictions or sentences on direct appeal. *See* Indiana Post-Conviction Rule 1.

## II.  Indigent Inmates Confined in all Penal Facilities and the Department of Correction Should have Access to the State Public Defender

Indiana Code Section 33-40-1-2(a) ("The State Public Defender Statute") provides:

The state public defender *shall* represent a person who is:

(1) Confined in a *penal facility* in Indiana or committed to the department of correction due to a criminal conviction or delinquency adjudication; and

(2) Financially unable to employ counsel;

in a postconviction proceeding testing the legality of the person's conviction, commitment, or confinement, if the time for appeal has expired.

(Emphasis added). Relevant to this case, Indiana Post-Conviction Rule 1(2) provides, in pertinent part:

> If an affidavit of indigency is attached to the [PCR] petition, the clerk shall call this to the attention of the court. If the court finds that the petitioner is indigent, it shall allow petitioner to proceed in forma pauperis. If the court finds the indigent petitioner *is incarcerated in the Indiana Department of Correction*, and has requested representation, it *shall* order a copy of the petition sent to the Public Defender's office.

(Emphasis added). Post-Conviction Rule 1(9)(a) addresses the responsibilities of the State Public Defender when the trial court forwards a petition and affidavit of indigency to the State Public Defender:

> Upon receiving a copy of the petition, including an affidavit of indigency, from the clerk of the court, the Public Defender *may* represent any petitioner committed to the Indiana Department of Correction in all proceedings under this Rule, including appeal, if the Public Defender determines the proceedings are meritorious and in the interests of justice. The Public Defender may refuse representation in any case where the conviction or sentence being challenged has no present penal consequences.

(Emphasis added).

Elzey argues that he meets the requirements of the State Public Defender Statute because he was confined in a *penal facility*, the Huntington County jail, and had proven he was indigent and unable to hire counsel. Therefore, he argues that his post-conviction petition should have been referred to the Public Defender. In response, the State argues that the post-conviction rules and the State Public Defender Statute do not conflict. The State contends that the rule only requires the post-conviction

court to refer an indigent petitioner to the Public Defender *if* they are committed to the DOC; however, if they are not, they can still contact the Public Defender for representation on their own.

We do not find that the statute and requisite post-conviction rules conflict. The State Public Defender Statute dictates which individuals are eligible for representation by the Public Defender— those confined in a penal facility or committed to the DOC because of a criminal conviction or delinquency adjudication—and requires them to prove they are financially unable to employ counsel. On the other hand, the post-conviction rules provide procedural mechanisms for trial courts to administer access to the Public Defender.

The State Public Defender Statute does not define "penal facility." "[W]hen a statutory term is undefined, the legislature directs us to interpret the term using 'its plain, or ordinary and usual, sense.' We generally avoid legal or other specialized dictionaries for such purposes and turn instead to general-language dictionaries." *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019) (internal citation omitted) (quoting Ind. Code § 1-1-4-1(1)). In this context, "penal" describes "used as a place of confinement and punishment." *Penal*, *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/penal. And "facility" means "something . . . that is built, installed, or established to serve a particular purpose." *Facility*, *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/facility. Thus, the plain meaning of "penal facility" encompasses any place established for confinement and punishment—not just the DOC.

Moreover, we find other statutes support this definition. The Legislature has defined *penal facility* under Indiana Code Section 35-31.5-2-232. "Penal facility means a state prison, correctional facility, *county jail*, penitentiary, house of correction, or any other facility for confinement of persons under sentence, or awaiting trial or sentence, for offenses. The term includes a correctional facility constructed under IC 4-13.5." *Id.* (Emphasis added).

Reading this section, we find that "or" separates inmates who are "confined in a penal facility" and those "committed to the department of

correction." I.C. § 33-40-1-2(a)(1). Under this plain reading, this means that inmates confined in either a "penal facility" or committed to the "department of correction" have access to the Public Defender. The Public Defender, as Amicus, asks this Court to limit their duty of representation to only those committed to the DOC; however, this would render the statute's "penal facility" language superfluous. As we do not presume that the Legislature intended to enact a statutory provision that is superfluous, meaningless, or a nullity, *SAC Fin., Inc. v. Ind. Dep't of State Revenue*, 894 N.E.2d 1116, 1120 (Ind. T.C. 2008), we reject this argument. Moreover, "[w]hen the word 'shall' appears in a statute; it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." *D.W. v. State*, 263 N.E.3d 151, 158 (Ind. 2025) (quoting *United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.*, 549 N.E.2d 1019, 1022 (Ind. 1990)).

Based on this reading, we conclude that the Public Defender must represent all indigent individuals who are confined in a penal facility in Indiana or committed to the DOC due to a criminal conviction or delinquency adjudication.

### III. The Trial Court Did Not Commit Reversible Error because our Post-Conviction Rules Failed to Adapt to Legislative Changes and Ultimately, Created an Inadvertent Gap

Based on our reading of the statute, Elzey was entitled to representation. However, the trial court did not commit reversible error because it followed our post-conviction rule as written at the time. Therefore, we acknowledge that, in this instance, our post-conviction rules created an unintentional gap for access to the Public Defender for indigent petitioners housed in county jails.

We see this gap as an unforeseen consequence of Indiana's criminal justice reforms that took place in the mid 2010's. In 2014, Indiana undertook major criminal-justice reforms driven by rising prison costs. "From 2000 to 2010, Indiana's spending on prisons had risen by seventy-

six percent, as the number of people incarcerated had grown by forty-one percent." *Lane v. State*, 232 N.E.3d 119, 123 (Ind. 2024) (citing Hon. Randall T. Shepard, *The Great Recession as a Catalyst for More Effective Sentencing*, 23 Fed. Sent'g Rep. 146, 146 (2010)). These reforms ultimately resulted in Level 6 felony offenders being placed in local county jails rather than the DOC. *Id.* at 124. The impact is that now, years later, lower-level felony offenders are being housed in county jails for a longer period, without a right of referral under our rules.

The State Public Defender Statute is substantive law that our post-conviction rules cannot modify. While our Court, through the Rules Committee, has the constitutional authority to enact procedural rules, these rules must operate within the boundaries set by statutory and substantive law and cannot enlarge or restrict jurisdiction. "Nor can a rule abrogate or modify the substantive law." *Washington-S. Nav. Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 635 (1924). In this regard, "it is well settled, however, that the Court, through its rulemaking authority, 'cannot change a rule of substantive law nor could the General Assembly vest [it] with such legislative power.'" *PNC Bank, Nat'l Ass'n v. Page*, 186 N.E.3d 633, 637 (Ind. Ct. App. 2022) (quoting *Square D. Co. v. O'Neal*, 72 N.E.2d 654, 655 (Ind. 1947)). "The function of rules is to regulate the practice of the court and to facilitate the transaction of its business. This function embraces, among other things, the regulation of the forms, operation and effect of process; and the prescribing of forms, modes and times for proceedings." *Washington-S. Nav. Co.*, 263 U.S. at 635.

Under the circumstances, our rule should be amended to further the purpose of the statute by facilitating its operation. As we said years ago, referral to the Public Defender is a crucial step:

> First, it provides the indigent petitioner with counsel thereby facilitating the orderly and coherent prosecution of the claim through the trial and appeal courts. Secondly, it insures that the petition will be presented in the form required by the rule which in turn effectively implements the underlying policy which is to limit the number of post-conviction petitions so far as constitutionally permissible by requiring all known and felt grievances to be aired in the original or first petition.

*Sanders v. State*, 401 N.E.2d 694, 695 (Ind. 1980).

It is important to note that while our statute *requires* the Public Defender to represent individuals in all penal facilities, the Public Defender Statute and our post-conviction rules still enable the office to exercise its discretion in agreeing to representation. Indiana Code Section 33-40-1-2(c) grants the Public Defender the authority to decline to "pursue a claim or defense that is not warranted under law and cannot be supported by a good faith argument for an extension, a modification, or a reversal of law, or that for any other reason is without merit." Beyond this, under post-conviction rule 1(9), the Public Defender maintains discretion to determine whether a post-conviction proceeding is meritorious and in the interests of justice. If the proceeding lacks merit or is not in the interests of justice, the Public Defender may refuse representation. In such cases, the petitioner retains the right to proceed *pro se* or employ private counsel. However, the court is not obligated to appoint alternative counsel. Ind. P-C.R. 1(9).

## Conclusion

Because the trial court followed our rule as it currently reads, we find no reversible error. However, we recognize the gap between our rule and the statute, so we refer this to our Rules Committee to amend in accordance with our rules process, with all deliberate speed.


Slaughter and Molter, JJ., concur.
Rush, C.J., concurs in part and dissents in part with separate opinion.
Goff, J., did not participate in the decision of this matter.

ATTORNEY FOR APPELLANT
Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Indiana Attorney General

Sierra A. Murray
Andrew A. Kobe
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
Amy Karozos
Indiana State Public Defender

Adam Carter
Deputy State Public Defender
Indianapolis, Indiana

**Rush, C.J., concurring in part and dissenting in part.**

Indiana law requires the State Public Defender (SPD) to represent indigent post-conviction petitioners who are "confined in a penal facility in Indiana or committed to the department of correction due to a criminal conviction." Ind. Code § 33-40-1-2(a). I agree with the Court that this statute encompasses individuals confined in county jails, meaning post-conviction petitioners in such facilities are entitled to representation by the SPD. *See ante*, at 7–8. But I disagree with the Court's holding that the trial court committed no reversible error by failing to forward Kortney Elzey's petition to the SPD. *See id.* at 8. I therefore concur with Sections I and II but respectfully dissent from Section III.

In my view, the trial court committed reversible error by affirmatively denying Elzey legal representation by the SPD. To be sure, Post-Conviction Rule 1(2) did not specifically require the court to forward Elzey's petition to the SPD. But that rule alone does not resolve the issue here, because the right to post-conviction representation is implemented in a unique way and Elzey's circumstances are unusual.

Unlike in criminal cases, trial courts do not directly "assign" counsel to indigent petitioners in post-conviction proceedings. *See* I.C. § 35-33-7-6(a). Rather, such a petitioner requests representation in their petition and, if "the indigent petitioner is incarcerated in" the DOC, the trial court must forward a copy of the petition to the SPD for review. Ind. Post-Conviction Rule 1(2). The SPD then determines whether "the proceedings are meritorious and in the interests of justice." P-C.R. 1(9)(a). If so, it may provide representation. *Id.*

Here, Elzey requested representation in his petition and attached to it an affidavit of indigency asking the court to "provide legal counsel." But because Post-Conviction Rule 1(2) does not explicitly require a trial court to act on behalf of a petitioner in county jail, the court issued an order denying what it characterized as Elzey's "request for the appointment" of the SPD. That order also informed Elzey that he could "proceed pro se and in forma pauperis" by filing affidavits within forty-five days but never mentioned the possibility of him writing directly to the SPD.

The trial court's order denying Elzey's request for appointment of the SPD was confusing and likely contributed to Elzey's failure to obtain representation. Though Section 33-40-1-2(a) entitled Elzey to representation by the SPD, neither that statute nor any rule provides a petitioner in his position with a mechanism to access the SPD's assistance. And so, Elzey understandably used the only mechanism that exists by expressing his desire for representation in his post-conviction petition. But the trial court went beyond merely informing Elzey it would not forward his petition; it issued an order telling him his "request for the appointment" of counsel was denied and confirming it expected him to rapidly proceed pro se. Thus, the court incorrectly suggested to Elzey that it had the authority to appoint counsel but would not do so.

Granted, Elzey might have written to the SPD directly, as the State suggests. But Elzey presumably did not know he could do that. And it is unreasonable to expect him, an unrepresented litigant, to independently seek SPD assistance when doing so would contravene a court order declaring him ineligible for such representation.[1]

For these reasons, I would hold that the trial court committed reversible error by affirmatively denying Elzey legal representation by the SPD.

---

[1] We have often explained that litigants proceeding pro se are afforded no leniency. *See Auto. Fin. Corp. v. Liu*, 250 N.E.3d 406, 410 (Ind. 2025). But the issue here concerns Elzey's efforts to seek the assistance of counsel, not his pro se pursuit of post-conviction relief.